UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JOHN RICHARD SINGLETARY,

                        Petitioner,                         Case No. 1:22-cv-349

v.                                                          Honorable Sally J. Berens

FREDEANE ARTIS,

                        Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Petitioner consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 3.) Section 636(c) provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).

This case is presently before the Court for preliminary review pursuant to 28 U.S.C. § 2253 and Rule 4 of the Rules Governing § 2254 Cases. The Court is required to conduct this initial review prior to the service of the petition. Rule 4, Rules Governing § 2254 Cases.

Service of the petition on the respondent is of particular significance in defining a putative respondent's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any

procedural imposition on a named defendant." *Id*. at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id*. (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.

Rule 4, by requiring courts to review and even resolve the petition before service, creates a circumstance where there may only be one party to the proceeding—the petitioner. Because Respondent has not yet been served, the undersigned concludes that Respondent is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review of the petition. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1] Petitioner's consent is sufficient to permit the undersigned to conduct the Rule 4 review.

The Court conducts a preliminary review of the petition under Rule 4 to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis*., 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros*.); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

§ 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

<u>Discussion</u>

## I.     Factual Allegations

Petitioner John Richard Singletary is incarcerated with the Michigan Department of Corrections at the Earnest C. Brooks Correctional Facility (LRF), in Muskegon Heights, Muskegon County, Michigan. On April 18, 2019, following a three-day jury trial in the Ingham County Circuit Court, Petitioner was convicted of first-degree criminal sexual conduct (CSC-I) in violation of Mich. Comp. Laws § 750.520b. On June 5, 2019, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to a prison term of 30 to 75 years.

The Michigan Court of Appeals described the facts underlying Petitioner's conviction as follows:

> Singletary and the complainant knew each other for 28 years. At the time of trial, they had been married for nine years. The complainant testified that on July 29, 2018, their relationship was not good. The complainant had discovered that Singletary was video chatting with a female coworker. When confronted, Singletary told her it was a male coworker and attempted to alter his call history to support his claim. Having seen the actual call history, the complainant went outside and smashed Singletary's phone on the sidewalk, shattering the screen. She then sat on the front porch steps while Singletary yelled at her on and off for approximately 20 to 30 minutes. An eyewitness described Singletary as ranting, raving, and upset. Eventually he left to purchase alcohol. The complainant testified that after he left she shut off his cellular phone service, noting that she was not going to continue to pay for his phone on their shared plan in light of his behavior and lying.

3

Singletary returned to the house around midnight on July 30, 2018. He started drinking alcohol and roughly petting one of the family's cats. Eventually he got into an argument with one of the complainant's adult sons. Concerned about the potential for violence, the complainant tried to separate Singletary and her son, first by asking the son to go downstairs and then by calling one of his siblings to pick him up. The son refused to leave and, although things calmed down for a while, Singletary eventually ended up pounding on the son's door, yelling and screaming. The complainant and the son both called the police: the complainant because she believed Singletary was out of control, and the son because he was scared. The officer that responded to the call observed that Singletary seemed intoxicated, but did not arrest or detain him because it did not appear that a crime had occurred.

After the police left, Singletary went to the bedroom he shared with the complainant. They watched one episode of a television show and, as another episode started, the complainant turned over to go to sleep. The complainant testified that Singletary started "feeling on me and rubbing on me." She pushed his hands away and told him that she "didn't want it." She knew he wanted to have sex, but told him "no." She testified that he started biting her, leaving visible marks. He also pulled her hair. He put his fingers inside her vagina before putting his penis inside her vagina. She testified that he told her that he loved her and that he hated her while he raped her. The complainant testified she did not call for help from her children who were in the house because she did not "want them to have that in their head."

The next morning, the complainant drove Singletary to a bank, a cellular phone store, and a fast-food restaurant before dropping him off at work. She then drove around, trying to decide what to do. Ultimately, she chose to report the assault "because it would just get worse" if she did not. The police photographed her. One of the photos showed a bruise where Singletary bit her arm. The complainant also was evaluated by a sexual assault nurse examiner (SANE). The SANE nurse's report corroborated the complainant's disclosure of Singletary biting her. There were marks near her right nipple and areola, her mouth, her arm, and her back.

The defense theory was that the complainant and Singletary engaged in consensual penile/vaginal intercourse and that the complainant only accused Singletary of raping her because she was upset by his contact with a female coworker. The jury, however, rejected his defense and convicted him of first-degree criminal sexual conduct.

*People v. Singletary*, No. 349530, 2021 WL 650538, at *1–2 (Mich. Ct. App. Feb. 18, 2021). The

jury heard testimony and arguments for about a day and a half. *See State of Michigan v. Singletary*,

No. 18-000726-FC (Ingham Cnty. Cir. Ct.), register of actions available at https://courts.ingham.

org/CourtRecordSearch/ (search last name Singletary, first name John, select and view case

number 18-00726-FC) (last visited May 9, 2022). The jurors deliberated for about two hours before returning their verdict. *Id.*

Petitioner appealed his conviction to the Michigan Court of Appeals, raising the same two issues he raises in the instant petition. By opinion issued February 18, 2021, the court of appeals affirmed Petitioner's conviction. Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, again raising the same two issues. By order issued June 1, 2021, the supreme court denied leave to appeal. *People v. Singletary*, 959 N.W.2d 516 (Mich. 2021).

On April 11, 2021, Petitioner timely filed his habeas corpus petition, which raises the following two grounds for relief:

> I.     Juror Bias. Juror #8 stated she could be "possibly" fair and impartial up to 90%, but not 100%. I have a fundamental right to have my case tried by a fair and impartial jury. There were 2 alternate jurors, so there was no reason <u>not</u> to exclude Juror #8. The trial judge abused her discretion by not removing Juror #8 for cause. My constitutional right to a fair trial has been violated.
>
> II.    Ineffective Assistance of Counsel. I was denied effective assistance of counsel due to my trial attorney not requesting a necessarily included lesser jury instruction to CSC-III, even though prior to the start of my trial I was offered a plea to CSC-III which would have taken away the mandatory minimum of 25 years. This was <u>not</u> harmless error since the jury was given no other possible verdict except guilty or not guilty to CSC-I.

(Pet., ECF No. 1, PageID.5, 7.)

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

6

comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of Section 2254(d) are satisfied, and the federal court can review

the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court,"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

**III.   Discussion**

**A.      Ineffective assistance of counsel (habeas ground II)**

Petitioner claims that his trial counsel rendered ineffective assistance because he failed to request a jury instruction regarding the lesser-included offense of third-degree criminal sexual conduct (CSC-III).[2] In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id*. at 687.

---

[2] CSC-III is not, categorically, a lesser-included offense of CSC-I. The CSC-I statute defines multiple circumstances that would render a sexual penetration a first-degree crime. Mich. Comp. Laws § 750.520b. Likewise, the CSC-III statute defines multiple circumstances that would render a sexual penetration a third-degree crime. Mich. Comp. Laws § 750.520d. Each set of circumstances that constitutes a CSC-III does not necessarily line up as a lesser-included set of circumstances of a CSC-I crime. Nonetheless, the proposed CSC-III charge against Petitioner, Mich. Comp. Laws § 750.520d(1)(b), corresponds to the CSC-I charge, Mich. Comp. Laws § 750.520b(1)(f), with only one differentiating factor—the latter requires proof of personal injury to the victim. Thus, a CSC-III charge based on the set of circumstances described in 1(b) is a lesser-included offense of a CSC-I charge based on the set of circumstances described in 1(f). *People v. Clark,* No. 320007, 2015 WL 4546501 (Mich. Ct. App. Jul. 28, 2015).

A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The Michigan Court of Appeals applied the following standard to resolve Petitioner's claim:

> In order to establish that his lawyer provided ineffective assistance, the defendant must establish (1) that his lawyer provided deficient assistance, i.e., that his performance "fell below an objective standard of reasonableness," and (2) that he was prejudiced by his lawyer's deficient performance, i.e., "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *People v Gioglio (On Remand)*, 296 Mich App 12, 22; 815 NW2d 589 (2012), remanded for resentencing 493 Mich 864 (quotation marks and citation omitted). "Because there are countless ways to provide effective assistance in any given case, in reviewing a claim that counsel was ineffective courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. (quotation marks and citation omitted).

*People v. Singletary*, No. 349530, 2021 WL 650538, at *4 (Mich. Ct. App. Feb. 18, 2021). Although the court of appeals cited state authority—*Gioglio*—as the source of the standard, the *Gioglio* court derived its statement of the standard directly from *Strickland*. *Gioglio*, 815 N.W.2d at 596–97. Thus, it cannot be said that the state court applied the wrong standard. To prevail, Petitioner must show that the state court applied the standard unreasonably.

When a federal court reviews a state court's application of *Strickland* under Section 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that "[t]he Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The court of appeals applied the first prong of the *Strickland* standard as follows:

> Singletary contends that his lawyer's performance was deficient because he did not request a jury instruction on third-degree criminal sexual conduct. An "instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002). In this case, a charge of third-degree criminal sexual conduct would have required the jury to find the same elements as first-degree criminal sexual conduct, save the "personal injury to the victim" element of first-degree criminal sexual conduct. Compare MCL 750.520b(1)(f) and MCL 750.520d(1)(b). Therefore, third-degree criminal sexual conduct is a necessarily included lesser offense of first-degree criminal sexual conduct. See *People v Mendoza*, 468 Mich 527, 540; 664 NW2d 685 (2003). Because the complainant's testimony supported a jury instruction on third-degree criminal sexual conduct, the trial court would have been obligated to give the instruction if Singletary's lawyer had requested it. *See People v Mills*, 450 Mich 61, 81; 537 NW2d 909 (1995).

> The fact that the jury could have been instructed on third-degree criminal sexual conduct does not, however, end our inquiry. The decision to not request the trial court to instruct the jury on a lesser-included offense can constitute sound trial strategy. *People v Sardy*, 216 Mich App 111, 116; 549 NW2d 23 (1996). At trial, the defense theory was that no crime was committed because the complainant had consented to the sexual contact between herself and Singletary. Thus, although an instruction on third-degree criminal sexual conduct was available, such an instruction was contrary to the defense that no crime had been committed. It was a reasonable trial strategy for the defense lawyer to proceed with an all-or-nothing defense as opposed to arguing to the jury that if it found nonconsensual sexual

contact, it should convict of third-degree rather than first-degree criminal sexual conduct. *See People v Nickson*, 120 Mich App 681, 687; 327 NW2d 333 (1982) ("The decision to proceed with an all or nothing defense is a legitimate trial strategy.").

Singletary argues that he could have pleaded to third-degree criminal sexual conduct before the start of trial. He also contends that the failure to request an instruction on third-degree criminal sexual conduct was not harmless error because without the instruction the jury could only find him guilty or not guilty of first-degree criminal sexual conduct. Neither argument is remotely relevant to whether the defense strategy of pursuing an all or nothing defense was a legitimate trial strategy. It is the defendant's burden to overcome the presumption that his lawyer provided constitutionally effective assistance. *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). Here, although the defense lawyer's chosen strategy of pursuing an all-or-nothing defense was unsuccessful, it is well-established that a lawyer's performance is not constitutionally deficient just because a chosen defense strategy did not work. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). Singletary has failed to establish that his defense lawyer's performance was constitutionally deficient.

*Id*. at *4–5.

In *Keeble v. United States*, 412 U.S. 205 (1973), the Supreme Court explored the possible outcomes that might follow from giving—or failing to give—a lesser-included offense instruction. The *Keeble* Court acknowledged the potential benefit that Petitioner claims was denied to him at trial:

[I]t is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction. In the case before us, for example, an intent to commit serious bodily injury is a necessary element of the crime with which petitioner was charged, but not of the crime of simple assault. Since the nature of petitioner's intent was very much in dispute at trial, the jury could rationally have convicted him of simple assault if that option had been presented. But the jury was presented with only two options: convicting the defendant of assault with intent to commit great bodily injury, or acquitting him outright. We cannot say that the availability

of a third option—convicting the defendant of simple assault—could not have resulted in a different verdict.

*Keeble*, 412 U.S. at 212–13.

Counsel did not offer the jurors the "third option." Instead, he made Petitioner's defense an "all or nothing" proposition—if the jurors believed Petitioner regarding the victim's consent to sexual penetration, Petitioner would be acquitted, but if the jurors disbelieved Petitioner—concluding instead that Petitioner accomplished sexual penetration by force or coercion—Petitioner still had a chance at acquittal because the prosecutor would be required to also prove beyond a reasonable doubt that Petitioner caused personal injury to the victim. *Compare* Mich. Comp. Laws § 750.520b(1)(f) and Mich. Comp. Laws § 750.520d(1)(b). If counsel had requested the third-degree criminal sexual conduct instruction, Petitioner's conviction would have been assured if the jurors disbelieved Petitioner's claim regarding consent. The potential benefit of avoiding the "third option," therefore, was another chance at acquittal; the potential cost, on the other hand, was not particularly great.

Despite Petitioner's suggestion to the contrary, the CSC-III conviction would have carried a 25-year minimum sentence. *See* Mich. Comp. Laws § 769.12 (requiring a 25-year minimum sentence for a fourth felony conviction for a "serious crime" and defining third-degree criminal sexual conduct as a serious crime). Thus, offering a CSC-III "third option" would have simply provided a different conviction that would have required a 25-year minimum sentence. Admittedly, the "maximum minimum" sentence for the CSC-I conviction could, and did, extend beyond the mandatory minimum, but that was an exercise of judicial discretion, *compare* Mich. Comp. Laws § 777.62 with § 777.64, not a statutory mandate. Moreover, the maximum sentence for either conviction would be the same. For counsel to pursue two chances at acquittal in exchange

12

for the possibility of an incremental increase in the minimum sentence carried some risk, but it was not, on its face, unreasonable.

Where the difference between the sentences for the two potential convictions is so small, it is difficult to characterize this as an "all or nothing" decision, but even if the choices were that extreme, the Sixth Circuit has concluded that an "all or nothing" strategy can fall "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. In *Kelly v. Lazaroff*, 846 F.3d 819 (6th Cir. 2017), the court conducted a *de novo* review of the objective reasonableness of counsel's "all or nothing" decision to assess whether appellate counsel should have raised the issue. The court concluded that counsel's decision to pursue a "'high risk, high reward' . . . 'all or nothing' defense . . . did not fall below the bar of professionally competent assistance." *Kelly*, 846 F.3d at 830. The same conclusion is warranted here. Petitioner has failed to show that the state court's conclusion regarding counsel's alleged failure is contrary to, or an unreasonable application of, *Strickland*, the clearly established federal law regarding ineffective assistance of counsel. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### B.    Biased juror (habeas ground I)

The Michigan Court of Appeals described the facts underlying Petitioner's complaint of a biased juror as follows:

> At the end of the second day of the trial, the court received a note from Juror 8 stating that she had recognized the complainant from a grocery store. On the third day of the trial, the court conducted a voir dire of Juror 8 to determine whether the juror's impartiality would be affected by her minor contact with the complainant. The juror stated that she had shopped at a market where the complainant worked. She had not spoken to the complainant outside of the usual pleasantries exchanged when checking out. She did not think that the contact would affect her ability to be fair and impartial when rendering a verdict, and she affirmed that she could apply the burden of proof, be fair to both sides, apply the presumption of innocence, listen to the evidence, and make a decision based solely upon the evidence. She did not think that the prosecutor had an easier burden of proof. She explained that she planned to "keep her distance" from the market "for a while," adding again that she did not think that the contact would influence her.

13

The defense lawyer then asked her a few questions:

> *Defense lawyer*. And the statement that you made was "I don't think so." Understanding that everything can't be an absolute, but, it concerns me when you say "I don't think so" because it may be some type of hesitation on your part in being able to say "Well, no, it will not affect me or yes, it will affect me." So, that's what I'm concerned with. Are you sure this will not effect [sic] you?

> *Juror 8*. I do think I have a bit of hesitation. But, to clarify, that was a little bit, it would be for, the fact that I only had positive experiences at the Apple Market. I think most of the people there are polite. I've never had negative interaction. Not that I'm like going to grocery stores to have negative interactions all the time or anything.

> *Defense lawyer*. Correct.

> *Juror 8*. I just want to be completely honest that I am pretty sure she worked there for a while and I am at that grocery store. I can't say 100% that that's going to be unbiased. I'm around like 90% sure.

> *Defense lawyer*. Okay. And the other part, for and you just stated that 90% this is not going to affect your impartiality.

> *Juror 8*. Yeah.

> *Defense lawyer*. But, then, you're gonna stop going there for whatever reason as far as however this verdict comes back, correct?

> *Juror 8*. Yes.

> *Defense lawyer*. So, it is affecting you. It is affecting your mental outlook in reference to this case, correct?

> *The court*. Not—, wait a minute. Now, you're going too far. I mean, she's indicated that it does not affect how she decides the case. If she decides to make some adjustment in her personal life and where she goes, then that's an adjustment in her personal life and where she shops. But, it's not an impact on how she decides this case.

Thereafter, the defense lawyer asked that the juror be excused. The court denied the request, stating:

> [S]he's indicated that she can be fair and impartial. And again, if she chooses to adjust something in where she shops, that's completely understandable. But, it doesn't mean that it impacts her decision in this case. It means her decision in this case as she indicated one way or the

> other might change the way she shops. So, that's a vast difference than
> having it influence this case. So, I'm not going to excuse the juror[.]

> On appeal, Singletary argues that the juror's statement that she was 90% sure was
> a statement that she was, in fact, 10% biased in favor of the complainant. And that,
> as a result, she was not an impartial juror.

*People v. Singletary*, No. 349530, 2021 WL 650538, at *2–3 (Mich. Ct. App. Feb. 18, 2021).

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy

the right to a speedy and public trial, by an impartial jury. . . ." U.S. Const. amend. VI. The right

to an impartial jury is applicable to the states via the Fourteenth Amendment. *See Turner v.

Louisiana*, 379 U.S. 466, 471–72 (1965); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). Further, "due

process alone has long demanded that, if a jury is to be provided the defendant, regardless of

whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent

commanded by the Sixth Amendment." *Morgan v. Illinois*, 504 U.S. 719, 727 (1992) (citations

omitted). "The *voir dire* is designed 'to protect [this right] by exposing possible biases, both known

and unknown, on the part of potential jurors.'" *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir.

2003) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984)). When

a juror's impartiality is called into question, the relevant issue is "did [the] juror swear that he

could set aside any opinion he might hold and decide the case on the evidence, and should the

juror's protestation of impartiality have been believed." *Dennis*, 354 F.3d at 520 (quoting *Patton

v. Yount*, 467 U.S. 1025, 1036 (1984)).

The court of appeals' resolution of Petitioner's challenge was entirely consistent with the

constitutional requirement of impartiality. The court disagreed with defense counsel's

characterization of the juror's statements:

> The trial court credited the juror's statement that she could be fair and impartial.
> "This Court defers to the trial court's superior ability to assess from a venireman's
> demeanor whether the person would be impartial." *Williams*, 241 Mich App at 522.
> In this case, the trial court's finding that the juror would be impartial is supported

by the record, which includes her unequivocal affirmation that she could apply the burden of proof, did not think that the prosecutor had an easier burden, would apply the presumption of innocence in Singletary's favor, and would listen to the evidence and make a decision based only on the evidence. Moreover, it is plain that the trial court viewed the juror's comment that she was "90% sure" not as an admission that she was 10% biased in favor of the complainant. Instead, as the court noted and as is supported by the juror's statements, she had a "bit of hesitation" in continuing to shop at the market based on her involvement in the case as a juror. We note that, the question posed to the juror before she made the 90% statement was whether she was certain she would not be influenced, not whether she was certain whether she could remain impartial. When faced with the trial court's questions that specifically inquired as to her ability to remain fair and impartial and to decide the case solely based upon the evidence, she indicated her belief that she could remain fair and impartial. In light of her assurances that she would be fair and impartial and considering the extremely limited nature of the juror's contact with the complainant (which consisted solely of exchanging pleasantries such as "hello, and how are you" while the juror was in the check-out line), we are not left with a definite and firm conviction that the trial court erred by finding the juror would be fair and impartial. The trial court, therefore, did not abuse its discretion by denying the motion to excuse her from the jury.

*People v. Singletary*, No. 349530, 2021 WL 650538, at *3 (Mich. Ct. App. Feb. 18, 2021).

The question of bias of an individual juror at a state criminal trial is one of fact. *Dennis,* 354 F.3d at 520 (citing *Patton,* 467 U.S. at 1036); *see also Sizemore v. Fletcher,* 921 F.2d 667, 672–73 (6th Cir. 1990) (citing *Smith v. Phillips*, 455 U.S. 209, 218 (1982)). A state court decision based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state court proceeding and not simply erroneous or incorrect. *Keith v. Mitchell,* 455 F.3d 662, 669 (6th Cir. 2006) (citing *Williams,* 529 U.S. at 409–11); *see also Young v. Hofbauer,* 52 F. App'x 234, 237 (6th Cir. 2002). The state court's factual determination is entitled to a presumption of correctness, which is rebuttable only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Petitioner has failed to offer any evidence, much less clear and convincing evidence, that the factual determinations of the trial court or the court of appeals that the juror could render a fair verdict were unreasonable. Instead, rather than showing that the state courts' interpretations of the

juror's comments were unreasonable, Petitioner simply invites this Court to interpret the comments differently. The issue is not, however, whether one can read the comments in a way that might support Petitioner's position, the issue is whether the state courts' reading was unreasonable. Because Petition has not even attempted to make that showing, he is not entitled to habeas relief.[3]

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that jurists of reason could . . . conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

---

[3] Moreover, although not necessary to the resolution of this issue, the Court finds the state courts' interpretation of the juror's statements to be eminently reasonable.

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## <u>Conclusion</u>

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:   June 2, 2022                                                    /s/ Sally J. Berens
                                                                         SALLY J. BERENS
                                                                     U.S. Magistrate Judge